UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

NATIONAL ASSOCIATION OF HOME )
BUILDERS, )
 )
    Plaintiff, )
 )
    v. )  Civ. No. 1:07-cv-00972 (RMU)
 )
UNITED STATES ARMY CORPS OF )
ENGINEERS, et al. )
 )
    Defendants. )
_____)

## DEFENDANTS' REPLY IN SUPPORT OF THEIR
## MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff National Association of Homebuilders ("NAHB") misses the point of the United States Army Corps of Engineers' (the "Corps'") motion for judgment on the pleadings. The Corps does not challenge the sufficiency of NAHB's injury allegations, which the Corps assumed for purposes of its motion. Nor does the Corps contend that NAHB's claims are not ripe for review. The crux of the Corps' motion is that the alleged injuries – the legal and practical consequences of the Corps' alleged unlawful assertion of jurisdiction over ditches – are not causally linked to the challenged agency action – nationwide permit ("NWP 46"). As explained in the Corps' motion, NWP 46 does not purport to address the scope of the Corps' jurisdiction over ditches and therefore does not cause the injury alleged by NAHB. Thus, NAHB lacks standing.

# ARGUMENT

I.  **NAHB'S ALLEGED INJURIES PRESUPPOSE AN ACTION TO DEFINE THE SCOPE OF THE CORPS' JURISDICTION OVER "WATERS OF THE UNITED STATES," WHICH NWP 46 EXPRESSLY DECLINES TO DO**

The Corps' motion for judgment on the pleadings puts at issue the causation element of standing. Thus, as the D.C. Circuit has counseled, "[w]e must . . . be very clear about what conduct and injury the [plaintiff] puts at issue." Transp. Workers Union v. Transp. Security Admin., 492 F.3d 471, 474 (D.C. Cir. 2007). In this connection, it is necessary to take "a peek at the substance of plaintiff's arguments," id. at 475, as "the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted," id. (quoting Allen v. Wright, 468 U.S. 737, 752 (1984)). See also id. (quoting Warth v. Seldin, 422 U.S. 490, 500 (1975) (standing "often turns on the nature and source of the claim asserted").[1]

Here, the challenged conduct is the Corps' issuance of NWP 46. NAHB argues that its injuries are the "legal consequences" of being regulated by NWP 46, see Pl. Opp. at 12, i.e., that it must "adhere to Corps requirements" or assume their activities are not regulated and risk penalties for non-compliance, see, e.g., id. at 11, 18, 19-20. These alleged injuries presuppose an action by the Corps to define the scope of its jurisdiction vis-a-vis ditches. The fatal flaw in NAHB's standing is not that its alleged injuries are insufficient; rather, the flaw is that NWP 46,

---

[1] This is not to say that the court must decide the merits. Contrary to NAHB's contention, see Mem. in Opp. to Def. Mot. J. on Pleadings ("Pl. Opp.") at 8, the issue presented by the Corps' motion for judgment on the pleadings – i.e., whether NWP 46 purports to exercise jurisdiction over ditches and thus causes NAHB's injury – properly focuses on whether plaintiff has standing to bring the particular claim alleged, without delving into the merits of NAHB's substantive claim – i.e., whether NWP 46 exceeds the Corps' authority because it purports to define waters of the United States to include ditches.

on its face, does not purport to define the scope of the Corps' jurisdiction, and therefore, there is no causal connection between NAHB's injuries and NWP 46. See Def. Mot. for J. on Pleadings ("Def. Mot.") at 6-7, 10-11, and Ex. A.

Importantly, the Court need not accept NAHB's characterization of NWP 46 as asserting jurisdiction over ditches, even though the Court must accept as true NAHB's factual allegations. In ruling on a 12(b)(1) motion to dismiss for lack of jurisdiction, the Court may consider materials outside of the pleadings and need not accept allegations that are contradicted by undisputed documents. Hohri v. United States, 782 F.2d 227, 241, (D.C. Cir. 1986), vacated on other grounds 482 U.S. 64 (1987); see also 5B C. Wright & A. Miller, Fed. Practice & P. § 1350, at 159-60 & n.47 (3d ed. 2004). Therefore, the Court need not assume the truth of NAHB's allegations that NWP 46 purports to "exercise jurisdiction" over ditches or "regulate[] and require permits" for ditches. Compl. ¶¶ 2, 25. By its terms, NWP 46 regulates certain activities in jurisdictional waters of the United States by establishing terms and conditions for discharges without an individual permit. See Def. Mot. at 6-7, 10-11, and Ex. A. However, NWP 46 does *not* regulate what is or what is not a jurisdictional water of the United States. Id. Thus, NAHB's contention that they have standing to challenge NWP 46 because they are regulated by it is unavailing here.

II.     **THERE IS NO CAUSAL CONNECTION BETWEEN NAHB'S ALLEGED INJURIES AND NWP 46**

To establish standing, NAHB must show that the injuries it alleges are traceable to the agency action challenged – NWP 46. In other words, NAHB must demonstrate a causal connection "between the injury and the conduct complained of." Transp. Workers, 492 F.3d at 474 (internal quotes and citation omitted); Wilderness Soc'y v. Griles, 824 F.2d 4, 18 (D.C. Cir.

1987) (causation requires that alleged injury is "dependent upon" the challenged agency action). The alleged injuries – the consequences of the Corps' expression of jurisdiction over non-tidal upland ditches – are not caused by NWP 46, because NWP 46 neither establishes the Corps' jurisdiction over ditches or requires a permit for activities in ditches.

NAHB asserts that by asserting jurisdiction over ditches, NWP 46 "drives NAHB members, whose projects are affected by upland ditches, into the PCN [pre-construction notification] process even though many of them have projects that are totally outside of the Corps's jurisdiction." Pl. Opp. at 21. The break in NAHB's causation chain, however, is that NWP 46 does not assert jurisdiction over ditches or otherwise "represent the Corps' view of its jurisdiction." See Pl. Opp. at 21. NAHB agrees that "ditches are subject to the Corps' regulatory jurisdiction only if they meet the regulatory definition of waters of the United States." Pl. Opp. at 21. NAHB further concedes that NWP 46 does not address the scope of what constitutes "waters of the United States." See Pl. Opp. at 18 ("NWP 46 does not provide the slightest indication of which non-tidal uplands ditches are jurisdictional and which are not.").

Thus, contrary to NAHB's arguments, there is no "straightforward chain" linking NWP 46 to NAHB's alleged injuries, and Natural Resources Defense Council v. EPA, 464 F.3d 1, 17 (D.C. Cir. 2006) ("NRDC"), is inapposite. In NRDC, the Court agreed with claims by NRDC that EPA regulations permitting the use of certain quantities of methyl bromide would lead to increased production and use of methyl bromide, which would result in increased emissions, which would increase ozone depletion, which would adversely affect NRDC's members' health. Id. The facts in NRDC establish a clear cause-and-effect relationship between the challenged agency action – EPA's rule permitting use of methyl bromide – and the alleged injury – increased

health risks to NRDC's members – that is lacking in this case. In contrast to the "straightforward" cause-and-effect chain in NRDC, NWP 46 does not purport to give an authoritative interpretation of the scope of the Corps' permitting authority and thus does not require anyone to submit to the Corps' regulatory process under the threat of sanction. Because NAHB activities in ditches are not any more or less subject to the Corps' permitting authority as a result of NWP 46, NWP 46 cannot be said to "drive" NAHB members into the PCN process, as NAHB argues.

Further, a party that is unsure of the jurisdictional status of a particular waterbody always has the option of seeking a jurisdictional determination from the Corps, outside of the PCN process. 33 C.F.R. §§ 320.1(a)(6), 325.9. A jurisdictional determination is a written determination by the Corps that a waterbody is subject to the regulatory jurisdiction of the Corps. 33 C.F.R. § 331.2. Thus, NAHB is incorrect that a prospective permittee "must subject itself to federal regulatory jurisdiction and permitting authority well before the Corps has determined whether any particular ditch meets its elusive jurisdictional criteria." Pl. Opp. at 22.

Moreover, if NAHB is correct that the ditches its members want to fill are outside of the Corps' jurisdiction, those members may proceed to fill those ditches without a nationwide permit and may forgo the PCN process altogether. Nothing in NWP 46 requires an NAHB member to subject itself to the PCN process or the Corps' permitting authority before the Corps has determined whether a ditch meets the Corps' jurisdictional criteria, as NAHB contends. Pl. Opp. at 21-22. True, anyone who discharges dredged or fill material into a ditch that is later determined to be a jurisdictional water without seeking authorization risks a potential enforcement action and civil or criminal penalties. But, this so-called "Hobson's choice" –

submit to the permitting process or risk an enforcement action – is not a consequence of NWP 46. The Corps declared in 1986, when issuing its regulations defining "Waters of the United States," that it "reserve[d] the right on a case-by-case basis to determine that a particular water body within these categories of waters is a water of the United States." 51 Fed. Reg. 41,206, 41,217 (Nov. 13, 1986) (attached as Ex. C. to Def. Mot.). Thus, for at least 20 years NAHB members have had to choose whether to seek Corps authorization prior to filling a ditch. NWP 46 does not force NAHB members into this choice.

The lack of a causal link between NWP 46 and NAHB's injuries makes this case analogous to Transportation Workers Union v. Transportation Security Administration, 492 F.3d 471 (D.C. Cir. 2007), notwithstanding that petitioners in that case raised a procedural challenge. In both cases, the pertinent issue is whether the challenged conduct *caused* the injury that is alleged to occur as a result of the putative illegal conduct. In Transportation Workers, petitioners argued that a change in the agency's guidance, made without notice and comment, caused a union member to lose his job. Id. at 475. The court found that the union member would have lost his job even in the absence of the change in the agency's guidance and therefore the challenged agency action – the change in the guidance – was not the cause of the alleged injury. Id. at 475-76.

In this case, NAHB's alleged injury is based on its claim that NWP 46 purports to define the Corps' jurisdiction over ditches. In fact, NWP 46 does not affect the jurisdictional status of ditches and thus does not cause NAHB's injury. It is immaterial that the claim NAHB asserts is a substantive challenge, whereas the claim in Transportation Workers is a procedural violation. The salient similarity between the two cases is not the types of claims alleged but the lack of a

causal relationship between the injury alleged and challenged conduct in light of the *particular* claim asserted. See id. at 477. Put another way, take away the putative illegal conduct in either case and the alleged injury is still present. See id. Even in the absence of NWP 46, NAHB members are faced with the choice of applying for an individual permit, assuming no permit is required, or asking the Corps for a determination whether the specific project is within the Corps' jurisdiction. Because the alleged injury is not dependent upon the putative illegal conduct, causation is lacking. See Wilderness Soc'y, 824 F.2d at 18.

Contrary to NAHB's arguments, this case is distinguishable from the D.C. Circuit's decision relating to NAHB's challenge to the Corps' 2002 NWPs, NAHB v. Corps, 417 F.3d 1272 (D.C. Cir. 2005). The issue in this case – whether there is a causal connection between NAHB's alleged injuries and NWP 46 – is different than the finality and ripeness issues the D.C. Circuit considered in NAHB v. Corps, 417 F.3d at 1279-80, 1283-84. In NAHB v. Corps, the Court found that the 2002 NWPs "affect[ed] appellants' activities in a 'direct and immediate' way" because the NWPs required NAHB members to choose either to modify their projects to conform to the NWP conditions, which NAHB challenged as unlawful, or to refrain from building until they could obtain individual permits. 417 F.3d at 1280, 1284. Here, NWP 46 lacks the same kind of "direct and immediate" impact on NAHB members' day-to-day business.

In this case, NAHB is not arguing that its right to proceed under NWP 46 is curtailed by illegal permit conditions. NAHB's claim here is that the Corps has no authority to require any permits for its members' activities in ditches. NWP 46, however, does not address the scope of the Corps' authority over ditches and therefore does not have any direct and immediate affect on

NAHB's claimed right to proceed to fill ditches without a permit.[2]  Of course, the Corps may disagree with an individual's assessment that a particular project is outside of the Corps' permitting jurisdiction and commence enforcement proceedings.  However, as discussed above, because NWP 46 does not purport to give an authoritative interpretation of the scope of the Corps' permitting authority, the risk of an enforcement action is not any greater as a result of NWP 46.

NAHB's reliance on Riverside Irrigation District v. Stipo, 658 F.2d 762 (10th Cir. 1981), an as-applied challenge to a nationwide permit, is also misplaced.  In that case, plaintiffs challenged a determination by the Corps that they could not proceed with a dam construction project under the authority of a particular nationwide permit and would have to pursue an individual permit instead.  The Corps argued that plaintiffs' challenge to a denial of a nationwide permit was not final because plaintiffs could pursue an individual permit.  Id. at 765.  The Tenth Circuit disagreed, finding that the plaintiffs had received "a clear and definite decision from the agency that the plaintiffs were not entitled to a nationwide permit."  Id.  In contrast, NWP 46

---

[2] Notably, the district court deciding the merits of NAHB's 2002 NWP challenge on remand agreed with this view of the scope of a NWP.  NAHB v. Corps, 453 F. Supp. 2d 116, 127 n.8 (D.D.C. 2006), appeal docketed, No. 06-5392 (D.C. Cir. Nov. 30, 2006).  NAHB had argued that the 2002 NWPs should be remanded so that the Corps could reconsider whether the NWPs would have more than "minimal cumulative adverse effect on the environment" under 33 U.S.C. § 1344(e)(1) because, in making its determination, the Corps had improperly considered the adverse effects on isolated waters not within the Corps' regulatory jurisdiction.  Id.  The Court rejected NAHB's argument, noting that "*a body of water does not become a 'water of the U.S.' and come within [the Corps'] regulatory jurisdiction because of a NWP; rather, the NWP simply specifies the permit criteria for bodies of water that are already within the Corps' regulatory jurisdiction*."  Id.  NAHB's challenge to the scope of the Corps' jurisdiction in the case at bar is similarly misinformed about the nature of the Corps' action in issuing a NWP, which simply does not address the Corps' interpretation of its jurisdiction over "waters of the United States."

does *not* provide any "clear and definitive decision from the agency" regarding the jurisdictional status of ditches.

This case also is distinguishable from other facial challenges to agency rules, cited by NAHB. For example, NAHB v. Corps, 2007 U.S. Dist. LEXIS, 6366, at *9 n.2 (D.D.C. Jan. 30, 2007), involved a facial challenge to the Corps' "Tulloch II Rule." The Tulloch II Rule governed when certain activities resulted in discharges into waters of the United States, and thus, unlike NWP 46, the rule reflected an affirmative statement of the agency's jurisdiction. On review, the district court concluded that NAHB's facial challenge "alleged a concrete and particularized injury that is actual, *traceable to enforcement of the Tulloch II rule*, and redressable by this court." Id. (emphasis added) (citation omitted). In contrast to the Tulloch II Rule, NWP 46 does not purport to define the scope of the Corps' permitting authority vis-a-vis ditches. While it may be true, as NAHB alleges, that one wanting to discharge dredged or fill material into a ditch faces a choice of either applying for a permit or facing potential enforcement proceedings, that choice is not a consequence that is traceable to enforcement of NWP 46.

### III.     NAHB'S REDRESSABILITY ARGUMENTS ARE FUTILE GIVEN THE LACK OF A SUFFICIENT CAUSAL NEXUS

NAHB's claim that the alleged injuries to it and its members can be redressed by the relief requested cannot overcome the lack of causation between NWP 46 and the alleged injury. Causation and redressability are separate and distinct requisites for standing, although they sometimes overlap. As the Supreme Court explained, "[causation] examines the causal connection between the assertedly unlawful conduct and the alleged injury, whereas [redressability] examines the causal connection between the alleged injury and the judicial relief requested." Allen, 468 U.S. at 753 n.19. Accordingly, a showing of redressability does not

satisfy standing, where the harm is not traceable to defendant's conduct. See id. (contrasting causation and redressability in finding that lack of causation defeated standing, even though relief requested "might have a substantial effect" on the alleged injury). Due to the lack of causation here, NAHB cannot establish standing, regardless of its allegation that its injuries are redressable by the relief requested.

The breadth of NAHB's request for relief declaring that the Corps has no authority over ditches, see Pl. Opp. at 24, demonstrates the importance of the causation requirement here. While this court may, in the appropriate circumstances, have the authority to issue declaratory relief for violations of the APA, its authority under Article III is limited to real cases or controversies. Because NWP 46 does not address the scope of the Corps' permitting authority, there is no real dispute between the parties and the relief requested by NAHB would be tantamount to an advisory opinion interpreting the Clean Water Act. Article III standing requirements serve to prevent the courts from issuing advisory opinions to resolve abstract disagreements.

NAHB's additional request for an injunction barring the Corps from applying or enforcing NWP 46, see id., would not redress its alleged injury, in any event. NWP 46 does not establish the Corps' authority to regulate ditches. Rather, NWP 46 presumes that the Corps will determine whether ditches are waters of the United States on a case-by-case basis, consistent with the Corps' longstanding interpretation of its regulations defining "waters of the United States." See Reissuance of Nationwide Permits, 72 Fed. Reg. 11,092, 11,143 (Mar. 12, 2007) (attached as Ex. A to Def. Mot.); 51 Fed. Reg. at 41,217 (attached as Ex. C. to Def. Mot.). Thus, even if the Court were to enjoin the Corps from applying NWP 46, activities resulting in

discharges of dredged or fill material into a ditch that is determined to be a water of the United States would require a section 404 permit, whereas activities resulting in discharges into a ditch that is not a water of the United States would not require any section 404 permit. In either case, a NAHB member would be in the same predicament NAHB claims causes injury now, i.e., the member would have to choose whether to seek authorization from the Corps or proceed without a permit.

At bottom, NAHB's redressability arguments are irrelevant. For the reasons discussed above, NAHB cannot establish causation. Therefore, the case should be dismissed.

## CONCLUSION

For the foregoing reasons, NAHB lacks standing under Article III of the Constitution. Accordingly, the Court should dismiss the Complaint with prejudice and enter judgment in the Corps's favor on the pleadings.

Respectfully submitted,

RONALD J. TENPAS
Acting Assistant Attorney General
Environment and Natural Resources Division

      /s/ *Jessica O'Donnell*
JESSICA O'DONNELL  (D.C. Bar #473166)
Environmental Defense Section
U.S. Department of Justice
P.O. Box 23986
Washington, D.C. 20026-3986
Telephone: (202) 305-0851
E-mail: jessica.odonnell@usdoj.gov

Street address:
601 D Street, NW, Suite 8000
Washington, D.C. 20004

OF COUNSEL:
Daniel Inkelas
Assistant Counsel for Litigation
Office of the Chief Counsel
U.S. Army Corps of Engineers
441 G Street NW
Washington, DC 20314

Dated: October 19, 2007            *Attorneys for Defendants*