# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| NATIONAL ASSOCIATION OF HOME BUILDERS, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 07-0972 (RMU) |
| | : | | |
| v. | : | Document No.: | 10 |
| | : | | |
| UNITED STATES ARMY CORPS OF ENGINEERS, *et al.*, | : | | |
| | : | | |
| Defendants, | : | | |
| | : | | |

## MEMORANDUM OPINION

### DENYING THE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

## I.    INTRODUCTION

The plaintiff, the National Association of Home Builders ("NAHB"), is an organization that represents builders, land developers and remodelers and strives to protect its members' interest in preserving the broadest lawful use of their property. It brings a facial challenge to a permit issued by the defendant,[1] which regulates the discharge of dredged or fill materials into non-tidal upland ditches, as being beyond the authority granted to the defendant by the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251-1387. The defendant moves for judgment on the pleadings, asking the court to dismiss the action on the grounds that the plaintiff lacks constitutional standing. Because the plaintiff has satisfied the pleading requirements for

---

[1]    The defendants in this action are the United States Army Corps of Engineers, Preston M. Geren, III, in his official capacity as Acting Secretary of the U.S. Department of the Army, and Robert L. Van Antwerp, in his official capacity as Chief Engineer for the U.S. Army Corps of Engineers. For simplicity, the court will refer to the defendants collectively as "the Corps" or "the defendant."

representational standing, and to a lesser extent, for standing in its own right, the court denies the defendant's motion to dismiss.

## II.     BACKGROUND

### A.     Statutory Framework

The purpose of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251-1387, is to protect the Nation's resources by prohibiting the discharge of pollutants into navigable waters without a permit. *See* 33 U.S.C. § 1311(a). The CWA authorizes the Corps to issue permits for the discharge of dredged or fill materials into navigable waters of the United States. 33 U.S.C. § 1344. The Corps may issue either individual permits on a case-by-case basis or general permits "on a State, regional, or nationwide basis for any category of activities involving discharges of dredged or fill material." *Id*. at 1344(e)(1). But, it may only issue a general permit "for any category of activities involving discharges of dredged or fill materials if the Secretary determines that the activities in such category are similar in nature, will cause only minimal adverse environmental effects when performed separately, and will have only minimal cumulative adverse effects on the environment." *Id*. If the Corps issues a general permit, "a party desiring to discharge fill or dredged material into our nation's navigable waters . . . may proceed without obtaining an individual permit or, in some cases, even without giving the Corps notice of the discharge." *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Engineers*, 417 F.3d 1272, 1275 (D.C. Cir. 2005) (citations omitted).

2

## B.    Factual Background

On March 12, 2007, the Corps issued six new general Nationwide Permits ("NWPs" or "permits"), including NWP 46, which "purports to authorize the discharge of dredged or fill materials into upland ditches." Am. Compl. ¶ 1. NWP 46 governs "non-tidal ditches that: (1) are constructed in uplands; (2) receive water from another water of the United States; (3) divert water to another water of the United States; and (4) are determined to be a water of the United States." Def.'s Mot. to Dismiss ("Def.'s Mot.") at 5 (citing 72 Fed. Reg. at 11,190).

Parties wishing to utilize NWP 46 must provide the Corps with pre-construction notification ("PCN") for their project. Def.'s Mot. at 5 (citing 72 Fed. Reg. at 11,190). To satisfy the PCN requirement, prospective permittees must provide written notice to the district engineer of their project "and must provide general information as well as information specific to the NWP invoked." Def.'s Mot. 6 (citing 72 Fed. Reg. at 11,142). Those submitting a PCN cannot begin work pursuant to NWP 46 until the Corps confirms that the project meets the requirements of the NWP and notifies the party that their activity may proceed. *Id*. If the Corps does not provide notice within 45 days, the party submitting the PCN may proceed with its activity. *Id*. Upon reviewing a party's PCN, the Corps may notify it that an individual permit is required. *Id*. In addition, pursuant to NWP 46, the Corps may conclude that a ditch is not a jurisdictional water of the United States, and accordingly, the party may not need Corps authorization to proceed with its project. Def.'s Mot. at 6 (citing 72 Fed. Reg. at 11,143). The defendant clarifies in its reply that NAHB members may proceed to fill ditches falling outside of

the Corps' jurisdiction without submitting a PCN.[2]  Def.'s Reply at 5.  This PCN requirement,
therefore, only applies to those waters determined to be within the Corps' jurisdiction and seeks
to ensure that NWP 46 is used only to authorize discharges into appropriate ditches and that the
result is only minimal adverse impact on the environment.  Def.'s Mot. at 5 (citing 72 Fed. Reg.
at 11,142).

    The plaintiff is a national trade association whose members include builders of residential
and commercial projects, land developers and remodelers.  *Id.* at ¶ 4.  The plaintiff challenges the
issuance of NWP 46 pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 551.
The plaintiff argues that non-tidal upland ditches are not within the purview of the CWA
because, in short, "ditches" fall within the definition of "point source," and "point sources" are
"discernable, confined and discrete conveyance[s]," not "navigable waters."  Am. Compl. ¶ 14.
Moreover, the plaintiff argues, "point sources" cannot constitute "navigable waters" because the
statute defines the "discharge of a pollutant" as "any addition of any pollutant to navigable waters
from any point source."  *Id.* (emphasis excluded).

### C.    Procedural History

    The plaintiff filed this action on May 24, 2007 and corrected its complaint on July 16,
2007, bringing suit pursuant to the APA and the CWA.  Specifically, the plaintiff asks the court
to declare that the Corps has no authority to regulate upland ditches.  *See generally id.*  The
defendant moved the court to dismiss the action, arguing that the plaintiff lacks constitutional

---

[2]    The Corps notes that although individuals may forego the PCN process under such
circumstances, "anyone who discharges dredged or fill material into a ditch that is later
determined to be a jurisdictional water without seeking authorization risks a potential
enforcement action and civil or criminal penalties."  Def.'s Reply at 5-6.  But, it argues that "this
so-called 'Hobson's choice' . . . is not a consequence of NWP 46."  *Id.*

standing. Def.'s Mot. The plaintiff opposes that motion, arguing that it has demonstrated

standing sufficient for this stage of the litigation. Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n").

On August 8, 2007, the Natural Resources Defense Council ("NRDC") moved to

intervene, arguing that it "and its members have a significant and protected interest in the proper

regulation of discharges into [upland ditches]." NRDC's Mot. to Intervene ("NRDC's Mot.") at

2. On November 6, 2007, the court denied that motion, but it granted NRDC permission to

participate in this action as amicus curiae. Mem. Op. (Nov. 6, 2007). The court now resolves the

defendant's pending motion to dismiss.


### III.    ANALYSIS

#### A.    Legal Standard for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed but

within such time as not to delay the trial, any party may move for judgment on the pleadings."

See FED. R. CIV. P. 12(c). Under Rule 12(c), the court must accept the nonmovant's allegations

as true and should view the facts in the light most favorable to the nonmoving party. *See Judicial

Watch, Inc. v. Clinton*, 880 F. Supp. 1, 7 (D.D.C. 1995). The court should grant a motion for

judgment on the pleadings if the movant "is entitled to judgment as a matter of law." *See Burns

Int'l Sec. Servs. v. Int'l Union*, 47 F.3d 14, 16 (2d Cir. 1995).

#### B.    Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies

outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

(1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen.*

*Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)). On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court may dismiss a complaint for lack of subject-matter jurisdiction only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Thus, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). When necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the

complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

The level of scrutiny with which the Court examines the allegations in the complaint

that support a finding of jurisdiction, however, depends on whether the motion to dismiss asserts

a facial or factual challenge to the court's jurisdiction. *See I.T. Consultants v. Pakistan*, 351 F.3d

1184, 1188 (D.C. Cir. 2003). Facial challenges, such as motions to dismiss for lack of standing

at the pleading stage, "attack[ ] the factual allegations of the complaint that are contained on the

face of the complaint." *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 20 (D.D.C. 2003) (internal

quotation marks and citation omitted). "If a defendant mounts a 'facial' challenge to the legal

sufficiency of the plaintiff's jurisdictional allegations, the court must accept as true the

allegations in the complaint and consider the factual allegations of the complaint in the light most

favorable to the non-moving party." *Erby v. United States*, 424 F. Supp. 2d 180, 181 (D.D.C.

2006); *see also I.T. Consultants*, 351 F.3d at 1188. The court may look beyond the allegations

contained in the complaint to decide a facial challenge, "as long as it still accepts the factual

allegations in the complaint as true." *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402

F.3d 1249, 1253-54 (D.C. Cir. 2005).

### C. The Court Denies the Defendant's Motion Because NAHB has Sufficiently Pled Standing

The defendant moves to dismiss arguing that the plaintiff has failed to demonstrate a

specific injury in fact as required for standing. Def.'s Mot. at 10. Although it concedes that the

plaintiff does allege various interests, the defendant challenges that the plaintiff has not alleged

how the interests are harmed by NWP 46. *Id.* And, assuming that the plaintiff has demonstrated

an injury in fact, the defendant argues that the plaintiff cannot establish the requisite casual link

between that injury and the issuance of NWP 46. *Id.* The plaintiff counters that it has standing

to sue in its own right as well as standing in its representational capacity on behalf of its

members. Pl.'s Opp'n at 8-24. The court concludes that the plaintiff has set forth allegations

sufficient to satisfy the requirements of standing at this procedural posture.

### 1.    Constitutional Standing

Article III of the Constitution limits the jurisdiction of federal courts to cases or

controversies. U.S. CONST. art. III, § 2, cl. 1. Consequently, the NAHB, as any plaintiff, must

demonstrate its standing as "an essential and unchanging predicate to any exercise of a court's

jurisdiction." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (citing *Lujan v.

Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). At the motion to dismiss stage, "general

factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion

to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary

to support the claim.'" *Defenders of Wildlife*, 504 U.S. at 561 (1992) (quoting *Lujan v. Nat'l

Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). To demonstrate standing, then, the plaintiff must

satisfy a three-pronged test. *Sierra Club*, 292 F.3d at 898 (citing *Defenders of Wildlife*, 504 U.S.

at 560). First, the plaintiff must have suffered an injury in fact, defined as a harm that is concrete

and actual or imminent, not conjectural or hypothetical. *Byrd v. Envtl. Prot. Agency*, 174 F.3d

239, 243 (D.C. Cir. 1999) (citing *Steel Co.*, 523 U.S. at 103). Second, the injury must be fairly

traceable to the governmental conduct alleged. *Id.* Finally, it must be likely that the requested

relief will redress the alleged injury. *Id.* But, this Circuit has made clear that no standing exists

if the plaintiff's allegations are "purely speculative[, which is] the ultimate label for injuries too

implausible to support standing." *Tozzi v. Dep't of Health & Human Servs.*, 271 F.3d 301, 307 (D.C. Cir. 2001). Nor is there standing where the court "would have to accept a number of very speculative inferences and assumptions in any endeavor to connect the alleged injury with [the challenged conduct]." *Winpisinger v. Watson*, 628 F.2d 133, 139 (D.C. Cir. 1980).

Because NAHB is an association, it may sue in its own right or on behalf of its constituents. The plaintiff argues that it has satisfied the pleading requirements for both types of standing. To sue in its own right, the plaintiff "must demonstrate that [it] has suffered injury in fact, including such concrete and demonstrable injury to [its] activities – with [a] consequent drain on [its] resources – constituting . . . more than simply a setback to [its] abstract social interests." *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995) (quotations and citations omitted). The plaintiff asserts that it, along with its members, has suffered an injury in fact because NWP 46 purports to improperly regulate upland ditches despite the fact that the CWA "only give[s] the Corps authority to issue permits for discharges into 'the navigable waters.'" Pl.'s Opp'n at 11. More specifically, the plaintiff argues that NWP 46 burdens its members by requiring the submission of PCNs, even though they may not ultimately need approval for their projects. *Id*. at 7. Because the plaintiff "has been directed by its members to advocate for the appropriate regulation of non-tidal upland ditches," it contends that NWP 46 causes an injury in fact. *Id*. at 12 (citing Compl. ¶ 4(b)).

The allegation that NWP 46 hinders its ability to adequately represent its members is a sufficient, though not strong, allegation to demonstrate injury in fact at this stage. *Spann v. Colonial Village, Inc*., 899 F.2d 24, 27 (D.C. Cir. 1990) (stating that harm to an organization's noneconomic interest does not deprive the organization of standing) (citing cases). Although it

has not yet done so, the plaintiff may go on to demonstrate, for example, "that purported illegal action increases the resources the group must devote to the programs independent of its suit challenging the action," as it has alleged. *Id*. (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363 at 379 (1982)). That is, the plaintiff may demonstrate that it has expended money to inform its members of and to lobby against NWP 46. This injury is fairly traceable to the alleged government conduct because the plaintiff alleges that the promulgation of NWP 46 is outside the scope of the CWA and wrongfully requires the submission of PCNs for activities that may qualify for NWP 46, even though non-tidal upland ditches are beyond the Corps' jurisdiction, thereby restricting its ability to protect its members' rights to "dig, construct and alter upland ditches" as part of their construction on their own property. Pl.'s Opp'n at 7, 12. Finally, the plaintiff's requested relief, *i.e.* the determination that NWP 46 is facially invalid, will remove this hindrance to the plaintiff's ability to advance the interests of its members. Accordingly, although the plaintiff's showing of injury in fact is relatively weak, the court cannot at this stage conclude that the plaintiff lacks standing in its own right.

The plaintiff's argument that it has standing to sue in a representational capacity on behalf of its members is more convincing. To demonstrate that its members would have standing to sue in their own right, NAHB "must demonstrate that it has at least one member who . . . can establish the elements of standing." *Friends of the Earth, Bluewater Network Div. v. U.S. Dept. of Interior*, 478 F. Supp. 2d 11, 17 (D.D.C. 2007). The plaintiff asserts that the Corps has exceeded its authority in issuing NWP 46 and that the result is the improper regulation of its members' activities. Am. Compl. ¶¶ 21-27; Pl.'s Opp'n at 12. Specifically, NWP 46 wrongfully attempts to directly regulate and causes an immediate injury to would-be dischargers, including

the plaintiff's constituents who "must often dig, construct, and alter upland ditches as necessary and appurtenant to residential construction projects." Pl.'s Opp'n at 12.  Because "NAHB members are regulated by NWP 46 [and] their land-use activities must adhere to Corps requirements," *id*. at 11, they are the object of the regulation.

In addition, NWP 46 requires the plaintiff's members to submit PCNs prior to any building project that falls under the permit, 72 Fed. Reg. at 11,142, and the plaintiff alleges that the Corps has no authority to require these extensive and burdensome documents. Pl.'s Opp'n at 7.  The requirement of PCNs is designed to assure that NWP 46 is used only to authorize discharges into ditches that meet certain requirements and activities that result in minimal adverse impacts on the environment.  Def.'s Mot. at 5 (citing 72 Fed. Reg. at 11,142).  Each PCN must specify (1) the location of the project, (2) a brief description of the project, (3) the project's purpose, (4) the direct and indirect adverse environmental impacts the project would cause and (5) a list of any other NWP's regional or general permit(s) or individual permit(s) that the applicant intends to use.  Def.'s Mot. at 6.  To this list, the plaintiff adds that PCNs must include (6) a delineation of special aquatic sites and other waters of the United States on the project site, (7) if the proposed activity will result in the loss of greater than 1/10 acre of wetlands, a statement describing how the mitigation requirement will be satisfied, (8) if any listed, endangered, or threatened species or designated critical habitat may be affected by the project and the names of any species that may be affected and (9) identification of any historic property that may be affected by the project.  Pl.'s Opp'n at 6 (citing 72 Fed. Reg. at 11,194-95).

Once a PCN is submitted and reviewed, the Corps may determine that the submitting party needs no Corps permission to proceed, Def.'s Mot. at 6, essentially rendering meaningless

the effort expended on the PCN.  This is the plaintiff's primary objection to the PCN requirement

and NWP 46.  It states that "by obligating a prospective permittee to submit a PCN for an activity

that may not ultimately require a CWA section 404 permit, the Corps is exercising authority

outside its statutory jurisdiction."  Pl.'s Opp'n at 7.  The plaintiff alleges that "the elaborate PCN

process is burdensome, costly, and time intensive," *id.*, and that if the Corps determines that no

permission was necessary, "[t]he time and money spent by the applicant to submit the PCN will

have been for naught," *id.* at 16.  To the plaintiff, this process requires its members to "subject

[themselves] to federal regulatory and permitting authority well before the Corps has determined

whether any particular ditch meets its elusive jurisdictional criteria."  *Id.* at 22.

The defendant argues, however, that no causal link exists between NWP 46 and the

alleged unlawful exercise of regulatory jurisdiction over upland ditches because NWP 46

expressly defers any determination of the jurisdictional status of ditches to a case-by-case

determination.  Def.'s Mot. at 2.  The Corps insists that NWP 46 merely provides that individuals

wishing to discharge into ditches that are determined to be jurisdictional may do so without

obtaining an individual permit.  *Id.*  That is, NWP 46 only applies to ditches that have been

determined to be a "water of the United States" under the defendant's jurisdiction, and NWP 46

does not, therefore, change the jurisdictional status of any ditches.  In addition, the plaintiff's

members need not submit PCNs unless their activities affect a ditch that is a "water of the United

States."  The defendant's argument would be more persuasive were it not for the broad language

of NWP 46 which states that "we are requiring pre-construction notification for all activities."

72 Fed. Reg. at 11,142.

For a plaintiff to demonstrate causation, it must demonstrate that the injury is "fairly traceable to the challenged action of the defendant, rather than resulting from a third party's independent action." *Tierney v. Fed. Election Comm'n*, 2008 WL 649236, at *1 (D.D.C. Mar. 12, 2008). The issue here is whether the passage of NWP 46 and its requirements have caused the plaintiff's injury. *Transp. Workers Union of Am., AFL-CIO v. Transp. Sec. Admin.*, 492 F.3d 471, 477 (D.C. Cir. 2007). The plaintiff claims that NWP 46 wrongly "creates legal rights and imposes binding obligations by authorizing certain discharges of dredged and fill materials into non-tidal upland ditches under CWA section 404(e) without any detailed project-specific review." Pl.'s Opp'n at 10. The plaintiff's members must adhere to the requirements of NWP 46, even though "the Corps lacks *any* permitting authority over *any* non-tidal upland ditch as statutory 'navigable waters.'" *Id.* at 11 (emphasis in original). The plaintiff argues that NWP 46 "has immediate and identifiable legal consequences for NAHB's members, who are objects of the rule." *Id.* The court agrees.

Despite the defendant's argument that the plaintiff's members need not submit PCNs unless their activities affect a ditch that is a "water of the United States," the broad language of NWP 46 states that "we are requiring pre-construction notification for all activities." 72 Fed. Reg. at 11,142. NWP 46 requires a PCN for activities possibly qualifying for NWP 46 which, as discussed, is a cumbersome process. And, as the plaintiff points out, "[t]he PCN process, in and of itself, requires a prospective permittee to subject its project to the Corps's regulatory authority, regardless of whether it might ultimately be necessary." Pl.'s Opp'n at 7. Whether or not NWP 46 purports to exercise jurisdiction over ditches, the broad language of the permit does impose a regulatory burden onto the plaintiff's members by requiring the submission of PCNs when they

13

are not expressly necessary.  Therefore, accepting as true the allegations in the complaint and

considering the factual allegations of the complaint in the light most favorable to the plaintiff, the

court concludes that the plaintiff has demonstrated standing sufficient to survive a motion to

dismiss.  Because the plaintiff has alleged that NWP 46 has resulted in its members having to

submit PCNs for activities possibly falling under NWP 46, an allegedly improper regulatory

burden, the court can readily discern that the plaintiff has sufficiently alleged that its members

would have standing to sue in their own right.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562

(1992) (explaining that "when the plaintiff is himself an object of the [government] action . . .

there is ordinarily little question that the action has caused him injury, and that a judgment

preventing or requiring the action will redress it").

   Because the plaintiff is asserting representational standing, however, more is needed.  The

plaintiff must also allege that "the interests at stake are germane to the organization's purpose,

and neither the claim asserted nor the relief requested requires members' participation in the

lawsuit."  *Consumer Fed'n of Am. v. Fed. Commc'ns Comm'n*, 348 F.3d 1009, 1011 (D.C. Cir.

2003) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

   The plaintiff does not squarely address how and why the interests at stake are germane to

the organization's purpose.  Looking to the complaint and to the plaintiff's opposition, however,

the court concludes that the plaintiff has put forth allegations sufficient to establish this fact.  The

stated purpose of the plaintiff organization is to represent "its members in legal, regulatory, and

legislative matters affecting the use and development of their land.  It is germane to NAHB's

organizational purpose to ensure that its members can use their property to the fullest extent

allowed by law."  Am. Compl. ¶ 4(a).  This action involves the alleged unlawful regulation of

14

discharges into upland ditches. As stated, the plaintiff's constituents "must often dig, construct, and alter upland ditches as necessary and appurtenant to residential construction projects." Pl.'s Opp'n at 12. Now, pursuant to NWP 46, they must either submit detailed PCN reports prior to beginning their projects or proceed on the assumption that their activities are outside the Corps' jurisdiction and risk civil or criminal penalties. Def.'s Reply at 5-6. If NWP 46 does indeed exceed the scope of authority granted to the Corps via the CWA, the interests at stake in this litigation are quite germane to the plaintiff's ability to ensure its members' unhindered lawful use of their land. *Competitive Enter. Inst. v. Nat'l Highway Traffic Safety Admin.*, 901 F.2d 107, 111 (D.C . Cir. 1990) (stating that "[g]ermaneness is satisfied by a mere pertinence between litigation subject and an organization's purpose" (internal quotations omitted)); *see also Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 793 F.2d 1322, 1329 (D.C. Cir. 1986). Finally, the court can identify no circumstances in this case that requires the participation of NAHB members. *See Ctr. for Auto Safety*, 793 F.2d at 1329. Accordingly, although the plaintiff's showing of standing in its own right is somewhat weak, the court concludes that the plaintiff has demonstrated that it has representational standing to bring this case.

## 2. Prudential Standing

Although the parties do not address the issue, the court *sua sponte* considers whether the plaintiff has prudential standing. *Ass'n of Am Physicians & Surgeons, Inc. v. Food & Drug Admin.*, 2008 WL 564942, at *5 (D.D.C. Mar. 4, 2008) (stating that "to challenge agency action, plaintiffs must satisfy the additional requirement of prudential standing"). "To establish prudential standing, a party's 'grievance must arguably fall within the zone of interests to be protected or regulated by the statutory provision . . . invoked in the suit." *Nuclear Energy Inst.,*

15

*Inc. v. Envt'l Protection Agency*, 373 F.3d 1251, 1266 (D.C. Cir. 2004) (quoting *Bennett v. Spear*, 520 U.S. 154, 162 (1997)).  This test seeks to "exclude only those whose interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit."  *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987).  The plaintiff's members are among those individuals whose activities are regulated by the CWA, and more specifically by NWPs, and therefore, the court easily concludes that the plaintiff has demonstrated prudential standing.  *Hazardous Waste Treatment Council v. Thomas*, 885 F.2d 918, 922 (D.C. Cir. 1989) (explaining that regulated parties have prudential standing because "those whom [an] agency regulates have the incentive to guard against any administrative attempt to impose a greater burden than that contemplated by congress").

## IV.    CONCLUSION

For the foregoing reasons, the court denies the defendant's motion for judgment on the pleadings.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 26th day of March, 2008.

RICARDO M. URBINA
United States District Judge