UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| NATIONAL ASSOCIATION OF HOME BUILDERS, | : : : | | |
| Plaintiff, | : : | Civil Action No.: | 07-0972 (RMU) |
| v. | : : | Re Document Nos.: | 24, 27 |
| UNITED STATES ARMY CORPS OF ENGINEERS *et al.*, | : : : | | |
| Defendants. | : : | | |

# MEMORANDUM OPINION

### DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING THE DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

The plaintiff, the National Association of Home Builders, is an organization that represents builders, land developers and remodelers and strives to protect its members' interest in preserving the broadest lawful use of their property. It challenges under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, a permit issued by the Army Corps of Engineers ("the Corps"), which regulates the discharge of dredged or fill materials into non-tidal upland ditches, as being beyond the authority granted to the defendant under the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq.* The court determines that, although the plaintiffs have standing to bring suit, the defendants have not violated the APA; accordingly, the court denies the plaintiff's motion for summary judgment and grants the defendants' cross-motion for summary judgment.

## II. FACTUAL & PROCEDURAL BACKGROUND[1]

Pursuant to the CWA,[2] in 2007 the Corps issued a series of nationwide permits ("NWPs") including NWP 46. Mem. Op. (Mar. 26, 2008) at 3. NWP 46 "purports to authorize the discharge of dredged or fill materials into upland ditches," and governs "non-tidal ditches that: (1) are constructed in uplands; (2) receive water from another water of the United States; (3) divert water to another water of the United States; and (4) are determined to be a water of the United States." *Id.* (internal citations omitted).

The plaintiff brings a facial challenge to the issuance of NWP 46, arguing that the Corps does not have jurisdiction over non-tidal upland ditches, *i.e.*, the plaintiff maintains that non-tidal upland ditches are not waters of the United States under the CWA. *See generally* Am. Compl. The plaintiff filed this action on May 24, 2007, *see generally* Compl., and filed an amended complaint on July 16, 2007, *see generally* Am. Compl. Specifically, the plaintiff asks the court to declare that the Corps has no authority to regulate non-tidal upland ditches. *See generally id*. On March 26, 2008, the court denied the defendants' motion for judgment on the pleadings, determining that the plaintiff had demonstrated standing to maintain the suit. *See generally* Mem. Op. (Mar. 26, 2008). Currently before the court are the parties' cross-motions for summary judgment, *see generally* Pl.'s Mot. for Summ. J. ("Pl.'s Mot."); Defs.' Cross-Mot. for

---

[1] The statutory framework of the CWA and the factual history of this case were discussed in detail in an earlier memorandum opinion. *See* Mem. Op. (Mar. 26, 2008). Accordingly, the court will only briefly summarize the relevant facts and procedural history.

[2] The CWA authorizes the Corps to issue permits for the discharge of dredged or fill materials into navigable waters of the United States. 33 U.S.C. § 1344. The parties and judicial authorities cited herein use the terms "navigable waters" and "waters of the United States," synonymously. *See, e.g.*, Pl.'s Mot. at 1, 6; Defs.' Cross-Mot. at 13; *Rapanos v. United States*, 547 U.S. 715, 720, 721 (2006).

Summ. J. ("Defs.' Cross-Mot."), and an amicus brief filed by the Natural Resources Defense Council ("NRDC"), *see generally* NRDC Amicus Br. With the motions now fully briefed, the court examines the applicable legal standards and the parties' arguments.

### III. ANALYSIS

#### A. Legal Standard for Standing

Article III of the Constitution limits the jurisdiction of federal courts to cases or controversies. U.S. CONST. art. III, § 2, cl. 1. These prerequisites reflect the "common understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). Consequently, "a showing of standing is an essential and unchanging predicate to any exercise of a court's jurisdiction." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Put slightly differently, "Article III standing must be resolved as threshold matter." *Raytheon Co. v. Ashborn Agencies, Ltd.*, 372 F.3d 451, 453 (D.C. Cir. 2004) (citing *Steel Co.*, 523 U.S. at 96-102).

As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing standing. *Defenders of Wildlife*, 504 U.S. at 561; *Steel Co.*, 523 U.S. at 104; *City of Waukesha v. Envtl. Prot. Agency*, 320 F.3d 228, 233 (D.C. Cir. 2003) (per curiam). The extent of the plaintiff's burden varies according to the procedural posture of the case. *Sierra Club v. Envtl. Prot. Agency*, 292 F.3d 895, 898-99 (D.C. Cir. 2002). At the pleading stage, general factual allegations of injury resulting from the defendant's conduct will suffice. *Id.* On a motion for summary judgment, however, the "plaintiff can no longer rest on such mere allegations, but must

3

set forth by affidavit or other evidence specific facts which for purposes of the summary judgment motion will be taken to be true." *Id.* at 899 (citing FED. R. CIV. P. 56); *accord Fla. Audubon*, 94 F.3d at 666.

To demonstrate standing, a plaintiff must satisfy a three-pronged test. *Sierra Club*, 292 F.3d at 898 (citing *Defenders of Wildlife*, 504 U.S. at 560). First, the plaintiff must have suffered an injury in fact, defined as a harm that is concrete and actual or imminent, not conjectural or hypothetical. *Byrd v. Envtl. Prot. Agency*, 174 F.3d 239, 243 (D.C. Cir. 1999) (citing *Steel Co.*, 523 U.S. at 103). Second, the injury must be fairly traceable to the governmental conduct alleged. *Id.* Finally, it must be likely that the requested relief will redress the alleged injury. *Id.* Our court of appeals has made clear that no standing exists if the plaintiff's allegations are "purely speculative[, which is] the ultimate label for injuries too implausible to support standing." *Tozzi v. Dep't of Health & Human Servs.*, 271 F.3d 301, 307 (D.C. Cir. 2001). Nor is there standing where the court "would have to accept a number of very speculative inferences and assumptions in any endeavor to connect the alleged injury with [the challenged conduct]." *Winpisinger v. Watson*, 628 F.2d 133, 139 (D.C. Cir. 1980).

If the plaintiff is an association, it may sue in its own right or on behalf of its constituents. To sue in its own right, the plaintiff "must demonstrate that [it] has suffered injury in fact, including such concrete and demonstrable injury to [its] activities – with [a] consequent drain on [its] resources – constituting . . . more than simply a setback to [its] abstract social interests." *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995) (quotations and citations omitted). To sue on behalf of its members, an association may demonstrate standing as long as "its members would have standing to sue in their own right, the

4

interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires members' participation in the lawsuit." *Consumer Fed'n of Am. v. Fed. Commc'ns Comm'n*, 348 F.3d 1009, 1011 (D.C. Cir. 2003) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). Finally, if the plaintiff is suing under the APA, the plaintiff must show that the alleged injury falls within the zone of interests that the statute on which the plaintiff bases the complaint seeks to protect. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990); *Fed'n for Am. Immigration Reform, Inc. v. Reno*, 93 F.3d 897, 900 (D.C. Cir. 1996).

### A. The Plaintiff Has Standing

In its previous memorandum opinion, the court determined that the plaintiff had sufficiently demonstrated standing to survive the defendant's motion for judgment on the pleadings, noting that "[b]ecause [the plaintiff's] members are regulated by NWP 46 [and] their land-use activities must adhere to Corps requirements, . . . they are the object of the regulation." Mem. Op. (Mar. 28, 2008) at 11. The defendant again challenges the plaintiff's standing to maintain this suit. Defs.' Cross-Mot. at 12-19. The parties dispute the first step of the standing

analysis,[3] *i.e.*, whether the plaintiff has suffered an injury in fact.[4]  *See* Pl.'s Mot. at 36-38; Def.'s Cross-Mot. at 13-15.

The plaintiff submits the declaration of Duane Desiderio, its Vice President of Legal Affairs in support of its motion.  *See* Decl. of Duane Desiderio in Support of Pl.'s Mot. ("Desiderio Decl.").  With respect to associational standing, the Desiderio explains that "over 2,500 of [the plaintiff's] members' primary business is the development of real property." *Id*. ¶ 5.  The plaintiff's "members have developed and will continue to develop land that contains non-tidal upland ditches," *id.* ¶ 8, and "must often create upland ditches to control storm runoff during a project's land preparation phase," *id.* ¶ 9.  In order to satisfy federal and state regulations regarding road building, the plaintiff's members often construct non-tidal upland ditches to drain roads they build to "service the travel needs of the buyers who will live in [the plaintiff's member's] housing projects and other community residents." *Id*. ¶ 10.  According to the plaintiff, due to NWP 46 its members are left unsure of whether ditches they construct fall under the defendant's jurisdiction and obtaining the "approved jurisdictional determination

---

[3] The defendant does not dispute that the "interests at stake are germane to the [plaintiff's] purpose," or argue that "the claim asserted []or the relief requested requires members' participation in the lawsuit."  *Consumer Fed'n of Am. v. Fed. Commc'ns Comm'n*, 348 F.3d 1009, 1011 (D.C. Cir. 2003) (internal quotation omitted); *see also generally* Defs.' Cross-Mot.

[4] The defendant also challenges the second standing prong, alleging that "NWP 46 did not alter the jurisdictional status of ditches" and therefore did not cause the alleged injury to the plaintiff or its members.  Defs. Cross-Mot. at 15-16.  Whether NWP 46 does in fact alter the jurisdictional status of ditches is an issue that is controverted on the merits and, thus, inappropriate for the court to decide in the standing context. *City of Waukesha v. E.P.A.*, 320 F.3d 228, 235 (D.C.Cir. 2003) (explaining that "in reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims") (citing *Warth v. Seldin,* 422 U.S. 490, 502 (1975)).  Thus, for the purposes of determining standing, the court assumes that the plaintiff's claims will prevail.  *See Defenders of Wildlife v. Gutierrez*, 532 F.3d 913, 924 (D.C. Cir. 2008) (applying *City of Waukesha's* standing analysis in the summary judgment context).

typically takes at least six months and requires extensive and expensive documents." *Id*. ¶ 13. Desiderio explains that the plaintiff's members "have unnecessarily spent time, money and other resources determining whether to obtain and then obtaining permit coverage . . . for discharges into non-tidal upland ditches that Congress never intended to be CWA 'navigable waters." *Id*. ¶ 15. Based on this information, the court determines that the plaintiff has sufficiently demonstrated associational standing. *See, e.g.*, *W. Va. Highlands Conservancy v. Johnson*, 540 F. Supp. 2d 125, 143 (D.D.C. 2008); *Natural Res. Def. Council v. E.P.A.*, 489 F. 3d 1364, 1371 (D.C. Cir. 2007); *see also Warth v. Seldin*, 422 U.S. 490, 515 (1975) (explaining that when an associational plaintiff "seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit" of the association's members).

### B. Legal Standard for Judicial Review of Agency Actions

The APA entitles "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . to judicial review thereof." 5 U.S.C. § 702. Under the APA, a reviewing court must set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id*. § 706; *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C. Cir. 2001). In making this inquiry, the reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989) (internal quotations omitted). At a minimum, the agency must have considered relevant data and articulated an explanation establishing a "rational connection between the facts found and the choice made." *Bowen v. Am. Hosp. Ass'n*, 476 U.S.

610, 626 (1986); *Tourus Records*, 259 F.3d at 736. An agency action usually is arbitrary or capricious if

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also County of L.A. v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999) (holding that "[w]here the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action").

As the Supreme Court has explained, however, "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Veh. Mfrs. Ass'n*, 463 U.S. at 43. Rather, the agency action under review is "entitled to a presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

In determining whether an agency proffers a permissible interpretation of a statute it administers, the court employs the two-step *Chevron* analysis. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). The court "must first exhaust the traditional tools of statutory construction to determine whether Congress has spoken to the precise question at issue." *Natural Res. Def. Council, Inc. v. Browner*, 57 F.3d 1122, 1125 (D.C. Cir. 1995). If, after applying accepted canons of construction, the court determines that Congress has spoken to the precise issue, "then the case can be disposed of under the first prong of *Chevron*." *Halverson v. Slater*, 129 F.3d 180, 184 (D.C. Cir. 1997). If the court determines

that the statute is silent or ambiguous with regard to the issue, however, the second prong of *Chevron* directs the court to defer to a permissible agency construction of the statute. *Id.*

### C. The Court Grants the Defendant's Motion for Summary Judgment

To prevail on their facial challenge to NWP 46, the plaintiffs "must establish that no set of circumstances exists under which the [permit] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see also Reno v. Flores*, 507 U.S. 292, 300-01 (1993) (acknowledging that *Salerno* applies to a statutory challenge as well as a constitutional one); *I.N.S. v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 188 (1991) (explaining that because "the regulation may be invalid as applied in [some] cases . . . does not mean that the regulation is facially invalid because it is without statutory authority").

The plaintiff's challenge rests on a single premise: ditches cannot be navigable waters. *See* Pl.'s Mot. at 13-33. Specifically, the plaintiff contends that because the term "ditch" is contained in the statutory definition of "point sources,"[5] a ditch categorically cannot also be a "navigable water"[6] because the two terms are mutually exclusive. *See id.* at 15-24. All of its other arguments stem from that foundation. *See generally id.* The defendant maintains that the plaintiff's premise is flawed and that, under certain circumstances, a ditch can be both a point source and navigable water. *See* Defs.' Cross-Mot. at 19-26; *see also generally* NRDC Amicus Br.

---

[5] "The term 'point source' means any discernible, confined and discrete conveyance, including but not limited to any . . . ditch . . . from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

[6] "The term 'navigable waters' means the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7).

Both parties rely heavily on *Rapanos v. United States*, 547 U.S. 715 (2006) to support their positions. In *Rapanos*, the Supreme Court interpreted a provision of the CWA regulating wetlands adjacent to navigable waters. *See generally id.* The central issue in *Rapanos* was whether the adjacent wetlands fell under the jurisdiction of the CWA. *Id*. at 730. Justice Scalia's plurality opinion and Justice Kennedy's concurring opinion contain a detailed analysis of the history and use of the term "navigable waters." *See id.* at 721-29, 730-42 (Scalia, J. plurality opinion); *id.* at 759-63, 765-83 (Kennedy, J. concurring). Although the plurality opinion stated that the statutory definitions at play "conceive[ed] of 'point sources' and 'navigable waters' as separate and distinct categories," it qualified that statement by noting that the statute "would make little sense if the two categories were *significantly* overlapping." *Id*. at 735 (emphasis added). Furthermore, the plurality opinion explained that "[t]he separate classification of 'ditch[es]'. . . shows that these are, *by and large, not* [navigable waters].'" *Id*. at 735-36 (emphasis added). Thus, the plurality opinion did not establish that the terms "point source" and "navigable waters" are always mutually exclusive; it merely recognized that most of the time they do not overlap. *Id.* Moreover, the plurality opinion admitted that ditches can be navigable waters but, under the circumstances at issue in *Rapanos*, are usually referred to by a different name (*e.g.*, rivers, creeks or streams). *Id*. at 736 n.7. Thus, although the plurality opinion in *Rapanos* clearly believed that the CWA does not give the Corps unfettered regulation authority, it stopped just short of declaring that a point source, such as a ditch, can *never* be a navigable water under the CWA. *Id*. at 735-36.

Though there is little precedential case law analyzing *Rapanos* (and no case law relevant

to the question presented here[7]), the court notes that in the past, many courts have held that ditches fall within the jurisdiction of the CWA. *See, e.g.*, *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1009 (11th Cir. 2004) (explaining that "ditches and canals, as well as streams and creeks[,] are navigable waters if they are tributaries of a larger body of water"); *United States v. Deaton*, 332 F.3d 698, 712 (4th Cir. 2003) (deferring to the Corps's decision to treat a roadside ditch as a navigable water); *Treacy v. Newdunn Assocs.*, 344 F.3d 407 (4th Cir. 2003) (holding that the ditch in question was a navigable water). The court recognizes that some courts have held that particular ditches are not navigable waters. *See, e.g.*, *FD&P Enters., Inc. v. Army Corps of Eng'rs*, 239 F. Supp. 2d 509, 514 (D.N.J. 2003) (holding that specific wetlands, ditches and streams are not navigable waters); *Haniszewski v. Cadby*, 2009 WL 3165723, at *8 (W.D.N.Y. Sept. 29, 2009) (explaining that the evidence presented regarding a specific "wetland drain" is insufficient to establish that the drainage ditch is a navigable water). Cases such as these, however, involved challenges to CWA jurisdiction as applied to specific ditches, *see generally FD&P Enters.*, 239 F. Supp. 2d 509; *Haniszewski*, 2009 WL 3165723, not a facial challenge like the one raised here challenging the Corps's authority to regulate ditches generally, *see generally* Am. Compl. Under the stringent standard applied to facial challenges, *see Reno*, 507 U.S. at 300-01, the plaintiff has failed to demonstrate that there is no set of circumstances under which NWP 46 would be valid, *see generally* Pl.'s Mot.; Pl.'s Opp'n. The Supreme Court, having the opportunity to definitively hold that ditches are not navigable waters, declined to do so. *See Rapanos*, 547 U.S. at 735-36. Thus, the court determining that the Corps's interpretation

---

[7] As explained below, a number of post-*Rapanos* cases have dealt with whether *specific* ditches qualify as navigable waters, but none have addressed a facial challenge such as the one brought by the plaintiff. *See, e.g.*, *Stepnia v. United Materials, LLC*, 2009 WL 3077888, at *4-5 (W.D.N.Y. Sept. 24, 2009).

of the CWA is reasonable and entitled to deference, upholds the facial validity of NWP 46. *See Deaton*, 332 F.3d at 712 (concluding that deference to the Corps's interpretation is appropriate because it is based on a "reasonable construction of the statute").

## IV. CONCLUSION

For the foregoing reasons, the court denies the plaintiff's motion for summary judgment and grants the defendants' cross-motion for summary judgment. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 30th day of March, 2010.

RICARDO M. URBINA
United States District Judge